And we'll proceed to the last case on the calendar, which is 21-16559 Shandhini Raidoo v. Douglas B. Moylan. I'm assuming that new Attorney General Guam should be substituted automatically for his predecessor. We'll hear first from Mr. Pauloon. Did I pronounce that right? Pauloon. Pauloon. Okay. It's like a boy's name, Paul, and then it rhymes with typhoon is my way of describing it. All right. You may proceed. And just for administrative purposes, the Attorney General will be substituted automatically as well as one of the members of the Guam Board of Medical Examiner. Okay. So you'll file a document? I will file a motion accordingly for that. I was thinking of that this week, but didn't want to surprise opposing counsel with filings right before oral arguments. All right. So, Your Honor, and may it please the Court, my name is Jordan Pauloon, and I represent the Attorney General of Guam as well as all of the members of the Guam Board of Medical Examiners. I would like to reserve five minutes of my time. The district court in this case entered a preliminary injunction against a Guam law that imposed an in-person informed consent counseling requirement on any individual seeking to obtain an abortion in Guam. The law at issue had stunningly similar requirements as the law approved of by the United States Supreme Court in Planned Parenthood of Southeast Pennsylvania versus Casey. Post the U.S. Supreme Court's opinion in Dobbs, it became even more clear that the injunction was based on a faulty legal premise that shifted the burden to the government to disprove any rational relationship. We asked this court to vacate the preliminary injunction and remand the case for further and final proceedings, and we asked this for primarily three reasons. First, the U.S. Supreme Court's opinion in Dobbs fundamentally altered the standard of review applicable to these cases in favor of changing it from an undue burden standard to rational basis review. The second, the law at issue in this case is rationally related to several legitimate government interests, and third, the district court shifted the burden to the government and did not provide the law at issue the strong presumption of validity that it's due. Primarily in this case, what's at issue is an in-person informed consent counseling session. The plaintiffs never challenged the content of it or even the requirement to provide the information to any individual, but they seek to perform abortion procedures or events completely via telemedicine and dispose of any in-person requirement that they appear for the counseling session. They would prefer to do that entirely over telemedicine. The informed consent provision has two elements of it. One is conveying medical information, and the other is conveying, I think, non-medical information. On a rational basis, can a non-medical provider convey the medical information? A non-medical provider can provide some of the medical information provided it's the stuff that is specified in the statute, but the statute itself, the other providers at least have some sort of medical or social work type training that would be required to at least have the sophistication to understand the material. None of that also precludes the doctor himself or herself from actually providing a separate medical informed consent over telemedicine that would concern things such as medical ethics and practice for their particular circumstances. The statute at issue is the general informed consent, but there may be particular circumstances to be consulted with patient by patient as well, intended for prevention of medical malpractice claims, tailoring things to individual patients, etc. But the list of the physicians or any qualified individuals, as the statute calls them, which includes nurses, social workers, psychologists, and a couple other categories as well, would have sufficient training to provide the medical information that's required by the statute. The other component then is the alternatives as well, and those do squarely fit within the list of physician or qualified individual as well. So I don't think that there's anything that's preclusive between the two, providing the materials provided by the government and given to the patient through those means as well. If there are circumstances unique to a particular patient, those could be dealt with via the telemedicine circumstance as well. But the main focus of the importance and gravity of the medical information as well as the alternatives does fall within the statute, and that was what was being required to be done in person. So what would happen if, say, a non-medical professional, a social worker, provides information about medical issues to the woman, and she has a follow-up question, a medical-related question, and the social worker, he or she can't really answer that medical information. What would happen in that scenario? I think there are a number of things that could happen in that scenario. I think for purposes of compliance with the statute, the provision of the information would be sufficient for compliance, and then the prescribing physician could separately answer those questions even via telemedicine. Or there could be a circumstance in which you were doing an in-person requirement, but there's nothing that particularly even states that the physician couldn't be listening in or consulting via telemedicine at the same time as well. There's a certain redundancy built into the statute, because the statute doesn't repeal the duties of care that physicians have, and so the physician is still going to have to make sure that all necessary and appropriate information that the physician thinks is needed to carry out the procedure is provided. But then you're requiring that some other person, a delegee, do what may be partially overlapping information. Am I understanding that correctly? I do think that there is some redundancy, but I don't think that we are requiring a different person to do it, because the in-person consultation session itself can be done by the treating physician or a qualified individual. So if the treating physician themselves wants to do that as well... Right. They've alleged that as a factual matter there are no treating physicians in Guam who are going to be able to provide the services, which is why they want to do it by telemedicine. Yes, and I think that's accurate at least as to some of the allegations in the complaint. But if we do look at the declarations of the two doctors that they attached, they both indicated that they would be willing to travel to Guam to provide these, and they have pre-established relationships with other physicians that are willing and capable of providing both pre- and post-abortion care. So as a practical matter, there wasn't any real barrier to following through with this in-person requirement either. And if you look at the affidavits, it wasn't, we have pre-existing relationships with social workers, we have pre-existing relationships with physicians who can provide actual pre- and post-abortion medical care. And so there was nothing that prohibited them from actually following through even on the medical basis from associating with a physician or even doing this themselves. And so there is a redundancy though, but the state is entitled to list off certain information related to medical procedures that it thinks is important for an individual to take in and understand prior to undergoing that procedure or, in this case, an abortion. And as the Supreme Court in Casey made clear too, in offering the alternatives to abortion as well, there's the important legitimate state interest of promoting fetal life and other things as well that weigh into that portion as well as the medical portion as well. And so the informed consent requirement here would have been capable of being provided by physicians either in Guam or the plaintiffs themselves had they chosen to come to Guam to do that. I think part of what was pressing on this case at the time that it was up before the district court is we were in the height of a pandemic where travel was much more limited, but that's not a forever scenario. It's really kind of odd though in the district court because I thought the whole point of Casey and both from the point of view of the majority and the dissenters in Casey is that this is now going to become an evidentiary matter and the government had no evidence to the district court under the Casey standard. Now, of course, Casey is gone, but it seemed quite odd that that's how the case was approached in the district court. I do think that there was some irregularities, but I think peculiarities in not having evidence under the Casey standard, but there is evidence in the legislative findings and other things that can be considered and it is still largely a legal question at that point in time. If the Casey court had approved of a similar statute, what makes Guam an exception really wasn't lined out. And so post-Dobbs though, too, we are still left with a rational basis standard related to the injunction, which means that it is not the government's burden to produce evidence in support of it. They just have to produce a rational reason for it. And I think what's helpful though, too, is if you go back and look at the report and recommendation that was prepared by the magistrate judge, I know that that's not a binding decision anymore because that's set aside by the district judge. But there is just common sense inferences and other things that can be taken from the difference between in-person and virtual informed consent that we know to be different as a matter of human experience. I think the United States Supreme Court has observed that as well in various cases relating to the confrontation clause. And the Seventh Circuit, in I believe it was the Newman case, also highlighted the difference between in-person consultations and virtual or telephonic ones and the ability to perceive the understanding and connect with the individual obtaining the information. So while there wasn't any additional evidence in the form of affidavits or testimony or things of that nature that was submitted to the district court at that time, there is just evidence and certain self-evident differences between video or virtual technology in real life that plainly supports the government statute. What's the status of the original 1990 Doe suit? My understanding from the docket is that the government of Guam has sought to reopen that in light of Dobbs. And where does that stand and what impact, if any, might that have on this case? Let me separate this out. I will answer the question. The statute at issue in this case was passed in, I believe, 2012, several years after a 1990 law was enjoined by the District Court of Guam under the Roe and Casey Standards. That 1990 law was a complete ban on abortion under any circumstance. Post Dobbs, the government of Guam has moved to vacate that injunction, and that still remains pending and percolating. The other complicating factor to the case is that the governor of Guam has filed an a declaration of the validity of that 1990 law, and rather it was impliedly repealed by the law in this case. So the validity of the law in this case also will inform that case more so than the other one coming forward. And as to the procedural posture of this case as it is on a preliminary injunction, those cases won't necessarily impact the injunctive nature here, because until the injunction over the 1990 law would be vacated, the abortion would still be permissible under the 2012 law at issue here, and the informed consent requirement would still need to be complied with. So it's your view, then, that we should still go forward to decide this case? We shouldn't hold it or anything for the other litigation? No, I don't think that this warrants holding because of the preliminary nature of it, and I actually suspect that the underlying Atta case is what it was. That was the governor at the time, Joe Atta. I think that will actually take quite some time to resolve, given the dueling actions between the federal court and the local court. And even if you look at the history of the Atta case itself, that was kind of rife with a whole bunch of complicating factors that drug it on for years, including depositions of almost every high-level official. And so I actually suspect the same course of action would be taken related to that case as well. So I don't think that there's any sort of mutual exclusion between vacating a preliminary injunction and requiring the in-person informed consent requirement, while these other issues work themselves through the courts. Okay. I think you said you wanted to save five minutes. Yes, and I will reserve the remainder of my time. Thank you. All right. And we'll hear now from Ms. Colby Molinas. Did I pronounce that correctly? Yes, Your Honor. All right. Great. Thank you. Good morning, Your Honors. May it please the Court. Alexa Colby Molinas for the Plaintiff's Appellees. Your Honors, when the informed consent law was passed over a decade ago, Guam had not recognized that it was legal to provide any medical care by telemedicine, including abortion. The only way to access that care was in person, which was the same way that informed consent was provided. Today, it is not only legal to provide all forms of medical care by telemedicine, it is the only way to access abortion, and the only physicians known to be providing that care are located here in Honolulu. As applied to this context, where the provision of care is entirely remote, requiring in-person consent is not rational, particularly because it forces the physicians who actually provide the care to delegate that responsibility to someone who doesn't provide abortion at all and may not even provide medical care at all. Now, today, the primary reason, the primary justification we heard from the Attorney General for why this is rational is that we should be considering the informed consent statute as some sort of belts and suspenders statute, that it provides the minimum, but then the physicians who actually provide the care can provide above and beyond. But the problem with that is that the rational basis test requires this court to look at what the statute requires regulated individuals to do and to find a rational relationship between the statutory text and a legitimate government interest. And the informed consent statute says that informed consent for abortion is legally valid quote, if and only if the terms of the statute are met. That is all that distinguishes a lawful medical procedure from a battery in the eyes of Guam law. Now, it is of course true that physicians will provide whatever additional information is necessary to ensure that their patients' decisions are informed, but the additional steps that they would take, voluntary steps that would take above and beyond the statute don't factor into the rational basis test. And I can provide an example, Your Honor. The core elements of informed consent, as we know, are providing patients with information about risks, benefits, and alternatives. If a legislature were to pass a law that says all informed consent is legally valid so long as physicians provide information about risks and benefits, but they have no obligation to provide any information about alternatives, I would hope and assume that most physicians would nevertheless continue to provide their patients with that information about alternatives. But that wouldn't change the fact that I think that statute as written would be irrational because that statute would turn informed consent on its head. And I think that's exactly the situation that is happening here, at least as applied to the facts. Of course, plaintiffs are not challenging the statute on its face, and they're not alleging that the in-person requirement is irrational on its face or was irrational in the legal context in which it was enacted when there was no telemedicine. But today, if you have a requirement, and the sole way that you can access that care is by telemedicine, and you have a requirement that prohibits the physicians who are actually providing that care from providing informed consent to their own patients and then forces them to delegate. But to say that it prohibits them from providing informed consent, I mean, it may be that it is, from your point of view, an irrational redundancy, but it is a redundancy. Nothing in this law prevents the physicians performing telemedicine from saying anything they want that they think they need to say to their patients to ensure that they get proper care. Indeed, I would assume that Guam's standards of care for doctors require them to provide whatever they think, and the exercise of that standard of care is required. So it's not a prohibition on them providing what they think is necessary for informed consent. Well, it's certainly not a gag order. It certainly doesn't stop them from speaking to their patients, Your Honor, but I would disagree because it prohibits them from providing legally valid informed consent. And actually it is undisputed here that the abortion informed consent statute displaced the general informed consent statute that applies to all other medical care, which is what you're describing, the sort of general obligation that any physician has to ensure, and of course that doesn't prohibit any of them from delegating it to someone else. How does the redundancy of this, the fact that there's this second thing on top, how does that destroy the informed consent? I don't think it doesn't destroy the informed consent, but under the statute informed consent is legally valid if the physicians never said another word, and that's what's irrational. The statutory text itself. But you have to review statutes in the context of the law as a whole, and so that statute is written against the understanding that there are independent obligations that apply to physicians under Guam laws, under any other law, and so it is in a repeal of those obligations. I guess I would disagree as a statutory interpretation matter because I do think that it displaced the general informed consent statute and then defined how informed consent for abortion would be provided, which is that a physician or another person under the statute could be a social worker. If a doctor, if this provision were complied with, but the doctor otherwise failed to provide the necessary information about risks in light of the particular circumstances of an individual patient and just totally fell down on the normal physician standard of care, nothing could be done against that doctor? The law isn't a shield for that doctor, is it? The law says that informed consent is valid if and only if its terms are met. So if a social worker went through, and this is the example I think that Judge Lee gave earlier, if a social worker went through each of the specific pieces of information that are in the Guam abortion informed consent law and provided that information to the patients, provided them a copy of the materials that have been produced by the Guam Department of Health, the law would be satisfied even if they couldn't answer any questions that the patient had because that's what Mr. Pauloon said here, it's just compliance with the terms of the statute is all that's required. But I do want to be clear, of course the plaintiffs and the physicians in this case would always provide their patients with the information that they need. I understand that's certainly their allegation. But the statutory text itself is what the statute requirement requires does turn informed consent on its head, Your Honor, at least as applied to these circumstances where there is no one in Guam who actually provides the care at issue. And I wanted to just clarify my understanding of the record on that point because the physicians put in declarations saying that there are cooperating physicians who would be in Guam who would be willing to assist them in carrying out the services that they provide. Is that correct? Let me clarify because that's not exactly correct. What the record says, and this is on page 85 of the supplemental excerpts of record, page 25, it's on pages 91 to 92, paragraphs 53 to 54. Now what this explains is that there are certain pre-abortion and post-abortion medical care that can be required. And there are physicians who provide this sort of care in Guam because the pre-abortion care is the same care that's provided to any person seeking to confirm their pregnancy. And the post-abortion care is the same medical care that would be provided to anybody who experienced a spontaneous miscarriage. So none of it is abortion-specific or abortion-related care. That actual abortion-related care is only being provided by physicians who are 4,000 miles away. It just happens to be that there are physicians who provide the sort of wraparound services that could be required but are not abortion-specific. What is the piece that they don't provide? The actual prescription and the actual assessing of whether the patient is eligible for a medication abortion, and then explaining the actual medication abortion process and how it works and what the patient should expect and what they should look out for. And then the prescription of the medication. What does the record say about why they'll do every other piece of the process but not that one piece, which is just, I assume, in an office and writing a prescription? They're unwilling to provide any abortion care, and I think there's extensive information facts in the record, and in particular there's at least one allegation on page 98 of the Supplemental Excerpts of Record, which is paragraph 81, which explains that physicians are afraid of retaliation if they provide abortions or if they are even known to be formally affiliated with abortion providers, and so that's why. And it was a mistake for Mr. Paulun to suggest that the physicians could just simply fly out to Guam to provide this care. They did want to try to do that, and they could not find any place that was willing to let them set up and actually provide the care because people were afraid. That's why. Is there anything in the record that expressly says there are no medical professionals in Guam who will comply with the in-person informed consent? No, we have not alleged that, Your Honor. Couldn't they then, you know, isn't it possible that those medical doctors or medical professionals could fulfill that function as opposed to, say, a social worker? No, the doctors who provide, at least the ones that they are aware of who provide the pre- and the post-care, those ones are unwilling to be formally affiliated with the physicians who provide the abortion care, and they would have to enter into a formal agency relationship in order to satisfy this statute because the statute requires either the physician who provides the abortion or someone to whom they have delegated the responsibility. So there is no evidence that they would be willing to enter into that relationship, but there also is no evidence that they couldn't find a psychologist or a nurse or a social worker who would be willing to do it. Just we would posit that that is irrational because that turns any notion of informed consent on its head to prevent at least the physician from providing legally valid, and it doesn't prevent them from talking to their patients, but prevents them from providing legally valid informed consent. What does the record show about what services they would provide? Because you described it as wraparound. What are the services that the resident physicians would be willing to provide prior to the ingestion of the drugs? It's assessing whether there's an intrauterine pregnancy, maybe assessing whether there's a need for RH testing, I mean, for RH injection for the person. Maybe if they suspect that they might have some sort of blood disorder and they might need some sort of hemoglobin testing. I'm probably speaking a little out of turn as a non-medical professional, but it's the sort of care that people get when they are determining whether they're pregnant and the sort of care that they would need as a pregnant person, regardless of whether they're choosing abortion or whether they're choosing to continue their pregnancy. And then the post-abortion care, if someone experiences a spontaneous miscarriage and it hasn't completed naturally, then they can perform a procedure to remove the contents of the uterus. But at that point, it's not an abortion because there's already been fetal or embryonic demise. And so people are willing to provide care for people if they're not providing an abortion, but they are not willing to actually provide the abortion itself. And in connection with the first part of that, they're unwilling to go through the informed consent process as part of that. The physicians that were mentioned here that they know of who would provide the pre-abortion care are unwilling to formally affiliate themselves with the physicians who provide abortions, and they would have to enter into a formal agency relationship to satisfy the statute. That's a sticking point. Maybe they would be willing to provide the information, but it wouldn't count under the statute in the absence of the affiliation, and that's what they're unwilling to do. Exactly. There's many people who could provide the information, and it wouldn't count. But for it to count, it has to be someone who is able to provide it in person, is one of the people listed under the statute, and has entered into a formal agency relationship with the plaintiffs. And so your position is that there are no people on Guam who qualify as qualified persons who will provide this information? We're not saying. Well, there are people. There may well be people who constitute qualified persons under the statute who would provide this information. But what there isn't on Guam is anybody who actually provides the medical care that is at issue, because there's nobody who provides abortion. Well, the medical care that is at issue is that required by the statute, not by some other standard, right? Oh, no, Your Honor, what I'm trying to say is that imagine we're talking about a different form of medical care. Imagine that there were no cardiologists in Guam, but there was a cardiologist who was willing to provide the care by telemedicine from Honolulu. What this statute would require is, say, you have to go talk to a social worker. The social worker doesn't provide any cardiology care, but they just have to go. What you're saying is that the informed consent statute cannot be carried out adequately unless the informed consent is given by a physician. I don't think it has to be a physician, but I think it has to be someone who actually provides or works with someone, works in a place where the medical care is actually provided. I think informed consent is delegated by physicians to other qualified professionals all the time, but it's qualified professionals. Expansion of the list doesn't impose a requirement to use ones on the list that you think are not suited to do the task. The physician picks the delegee, and the fact that they've given a broad list that has items that you may think are inappropriate, that they shouldn't really even let a social worker do it, you don't have to use a social worker. Pick another delegee in order to satisfy the statute. So I'm not sure how to... It's almost a question of standing. How can you object to the fact that they included a social worker on the list? Just don't use them if you think that's inappropriate. Well, they would have to use whomever they could find to satisfy the statute in order to be able to continue to provide the care. And I think what this court should be looking at when considering whether the statute itself is irrational, just simply as applied to these circumstances, not on its face, is whether it's rational to say to a physician, you just choose among these people, have them just provide this information that they're not qualified to provide, just provide it in person, and then you do the rest. Why do you say they're not qualified to provide the information? Maybe they're not qualified to do the abortion, but they're qualified to give the information, are they not? I don't know that I would think that a psychologist is necessarily qualified to provide some information under the statute. So that's your standard, but that's not the legislature's standard. Now why is the legislature's standard irrational? Why is it irrational for the legislature to say a psychologist or a social worker or a licensed professional counselor or a registered nurse or a physician can give the information? Why is that irrational? I think it is irrational in this context when there is no psychologist, no licensed professional counselor, no social worker, no nurse in Guam who actually provides the care, and therefore if we look at the actual information in the statute. You can't inform someone unless you provide the care. Well, I want to look at the actual information that's in the statute. For example, the anatomical and physiological development of embryos and fetuses at various ages, whether someone should have Rh testing or not. I think those are things that if you don't provide the care at issue, then no, I don't know that you're qualified. What does the record show about who's available as a practical matter to perform the informed consent process in person in Guam? The record doesn't show, and I think if this court thinks that further development in that respect would be helpful, then I think perhaps a remand to develop the record would make sense in that case. But no, the record just simply doesn't show one way or the other, whether there are nurses, psychologists, or social workers. All we know is that the physicians who provide the wraparound, sort of the most related services, are unwilling, at least according to the record, to be affiliated with the plaintiffs. I wanted to ask you the same question I asked your opposing counsel. Do you agree that we should go forward with this case, make whatever decision that we're going to make, regardless we shouldn't stay or hold anything for the Doe litigation? I think this court could and may well want to hold this decision, just because depending on how that plays out, all abortion could become illegal in Guam, in which case this would be irrelevant.  In order to see whether or not the 1990 ban, actually the injunction was lifted and actually took effect, then yes, I think that would be entirely appropriate. Your Honor, if you have no further questions, I believe my time is almost up. Okay. All right. Thank you, counsel. Thank you. Plaintiffs admit that informed consent is delegated all the time in a number of contexts, but then state that informed consent shouldn't be given unless you are the one that is providing the actual care. I can think of numerous circumstances where nurses and other paramedical staff like that provide the informed consent requirement on behalf of doctors. Part of her argument is that there may be a very limited pool as to who will actually be willing to provide it, and they may be forced to go to the category that they think is inappropriate, which is social workers. What's your response to that argument? I think first the record is sparse, and rather that's even a limited pool. They may be able to go to somebody else on the list, including the physicians that they already have connections with because the informed consent portion is a portion of pre-abortion care, not something that is... Is it true that in order to meet the requirement of the statute to provide this information in a way that will check this box, that they have to have a formal affiliation? They have to be an agent of some sort, and then there has to be a certification that is filed with the Department of Public Health. It's really statistical purposes that an abortion was performed and the statute was complied with. Are those records public? Would it identify who had participated? It will not necessarily identify who participated, but it will identify the number of abortions performed. It does not identify... It wouldn't say who provided the information? No. I was looking at the most recent statistics on it separately, and it didn't have the identifying information. Public health would likely know because of who's transmitting it, but that doesn't become, as far as I'm aware, public information. So there's the report to public health, but then there's also the factor of them being willing to fly out to Guam and provide this, and it was said that I made a mistake in saying that they're willing to fly out. I was merely quoting their declaration. They draw the distinction that the difference between being able to affiliate with somebody for purposes of it, but they also don't make any claim that they're incapable of setting up their own office for the purposes of doing it as well. And so I also think that the plaintiffs interpret the law in a way that the Guam Supreme Court would not in saying that this is the exclusive method of obtaining informed consent. I think it is the minimum way of obtaining informed consent, but I also think that, let's say you're faced with a patient that has particular contraindications to taking one of the particular medications that you're going to prescribe for the abortion. The Guam Supreme Court would not excuse liability for ignoring that precondition and failing to give the specialized risks of that to the patient, but what they would do is still require that, as a minimum, you have to provide the statutory informed consent. So I think that's really where the difference lies. The plaintiffs here are still trying to attack the entire informed consent requirement, but really what is still at issue is this in-person component, and there is just a qualitative difference between virtual reality and real life. I think two plus years of common human experience in a pandemic has shown us that that difference really still does exist. And I admit, there may be better ways of regulating a whole wide variety of things, but at the end of the day, the remedy that they seek here is something that they should be seeking from the Guam legislature to amend the law if they don't like it. Instead, we're sitting in a federal court where they're seeking a second guessing of the policy decisions and factual finding of the local legislature. And as the Casey court reminded us, men and women of good conscience are going to forever disagree on this, but it is really through our democratic processes and respect for our legislature and their findings and that process that we can actually make decisions for the betterment of society. We might not always agree, but that's what it is. So we ask that the preliminary injunction be vacated and the case returned to the district court for further and final proceedings. All right. Thank you, counsel. I thank both counsel and the case for the very helpful arguments in this matter. And the case just argued will be submitted, and we are in recess for today.
judges: BEA, COLLINS, LEE